1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

JOHN DOE, by and through his
12 Guardian Ad Litem, NICOLASA          NO. CIV. 09-245 WBS CMK
GONZALES,

13

          Plaintiff,              <u>MEMORANDUM AND ORDER RE:</u>
14                                 <u>MOTION TO DISMISS</u>

15      v.

BUTTE VALLEY UNIFIED SCHOOL
16 DISTRICT, EDWARD TRAVERSO,
GRAYCE KELLY,

17

          Defendants.
18 _____/

19                         ----oo0oo----

20          Plaintiff John Doe brought this action through his

21 guardian ad litem, Nicolasa Gonzales, because two students at

22 Picard Day School allegedly sexually molested and harassed him.

23 Pursuant to Federal Rule of Civil Procedure 12(b)(6),[1] defendants

24

_____

25      [1]    Although the instant motion was titled "Motion to
Dismiss or, in the Alternative, for a More Definite Statement,"
26 the accompanying Memorandum of Points and Authorities only refers
to a "Motion to Dismiss" and entirely phrases its arguments in
27 terms of Rule 12(b)(6) rather than Rule 12(e) of the Federal
Rules of Civil Procedure.  Accordingly, the court will construe
28 defendants' motion as one made pursuant to Rule 12(b)(6).

                              1

Edward Traverso and Grayce Kelly now move to dismiss the civil rights claim alleged in plaintiff's Fourth Amended Complaint ("FAC") for failure to state a claim upon which relief can be granted.

I.   <u>Factual and Procedural Background</u>

Plaintiff is a minor and a student at Picard Day School, which is part of the Butte Valley Unified School District ("Butte Valley").  (FAC ¶ 3.)  At all times relevant to plaintiff's claims, Kelly was plaintiff's teacher at Picard Day School, and Traverso was the superintendent of Butte Valley. (<u>Id.</u> ¶¶ 3-4.)  While plaintiff was attending school, two other minor students ("Moes 1 and 2") allegedly sexually molested and harassed plaintiff "over a period of weeks in February and March 2008," which included forced oral copulation and other sex acts. (<u>Id.</u> ¶ 7(d).)

Prior to the alleged sexual molestation and harassment of plaintiff, Moes 1 and 2 allegedly sexually molested other students on a school bus and on school property.  (<u>Id.</u> ¶ 6.) After filing a claim with Butte Valley pursuant to the Government Tort Claims Act, plaintiff initiated this action to hold Butte Valley, Traverso, and Kelly liable for the alleged conduct of Moes 1 and 2.

Plaintiff filed his original Complaint on January 27, 2009, and amended it as a matter of course the following day. After receiving leave from the court, plaintiff filed a Second Amended Complaint and a Third Amended Complaint ("TAC") on January 30, 2009, and February 24, 2009, respectively. Defendants subsequently filed a motion to dismiss the TAC on

2

1  March 12, 2009, which the court granted in part and denied in

2  part.

3          Plaintiff filed his FAC on May 22, 2009, alleging a

4  civil rights claim pursuant to 42 U.S.C. § 1983 against

5  defendants Traverso and Kelly, a sexual discrimination claim

6  pursuant to 20 U.S.C. § 1681(a) against Butte Valley, and a state

7  law negligence claim against defendants Traverso and Kelly.

8  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil

9  Procedure, defendants Traverso and Kelly now move to dismiss

10  plaintiff's § 1983 claim for failure to state a claim upon which

11  relief can be granted.[2]

12  II.  Discussion

13          On a motion to dismiss, the court must accept the

14  allegations in the complaint as true and draw all reasonable

15  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

16  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

17  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

18  (1972).  To survive a motion to dismiss, a plaintiff needs to

19  plead "only enough facts to state a claim to relief that is

20  plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

21  544, 570 (2007).  This "plausibility standard," however, "asks

22  for more than a sheer possibility that a defendant has acted

23  unlawfully," and where a complaint pleads facts that are "merely

24  consistent with" a defendant's liability, it "stops short of the

25  line between possibility and plausibility."  Ashcroft v. Iqbal,

26

27          [2]   On June 11, 2009, the court signed a stipulation among
   the parties waiving oral argument on this motion.  (See Docket
28  No. 31.)

3

1   129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 556-

2   57).

3        Although § 1983 is not itself a source of substantive

4   rights, it provides a cause of action against any person who,

5   under color of state law, deprives an individual of federal

6   constitutional or statutory rights.  42 U.S.C. § 1983; <u>Graham v.</u>

7   <u>Connor</u>, 490 U.S. 386, 393-94 (1989).  Here, the federal rights

8   that plaintiff seeks to vindicate stem from the Due Process and

9   Equal Protection Clauses of the Fourteenth Amendment.

10       A.   <u>Due Process</u>

11        "The substantive component of the Due Process Clause

12  forbids the government from depriving a person of life, liberty,

13  or property in such a way that . . . interferes with rights

14  implicit in the concept of ordered liberty." <u>Engquist v. Or.</u>

15  <u>Dep't of Agric.</u>, 478 F.3d 985, 996 (9th Cir. 2007) (quoting <u>Squaw</u>

16  <u>Valley Dev. Co. v. Goldberg</u>, 375 F.3d 936, 948 (9th Cir. 2004)).

17  "It is well established," moreover, that substantive due process

18  "protects a citizen's liberty interest in her own bodily

19  security." <u>Kennedy v. City of Ridgefield</u>, 439 F.3d 1055, 1061

20  (9th Cir. 2006) (citing <u>Ingraham v. Wright</u>, 430 U.S. 651, 673-74

21  (1977); <u>Wood v. Ostrander</u>, 879 F.2d 583, 589 (9th Cir. 1989)).

22        In this case, defendants cite <u>DeShaney v. Winnebago</u>

23  <u>County Department of Social Services</u>, 489 U.S. 189 (1989), to

24  argue that the "failure to protect an individual from harm at the

25  hands of a private party generally does not constitute a

26  violation of the due process clause." (Mem. Supp. Mot. Dismiss

27  2:19-20.)  While acknowledging <u>DeShaney</u>'s central holding, the

28  Ninth Circuit has also recognized that "[t]his general rule is

4

modified by two exceptions: (1) the 'special relationship'
exception; and (2) the 'danger creation' exception." L.W. v.
Grubbs, 974 F.2d 119, 121 (9th Cir. 1992).  The former instructs
that "[a]fter the state has created a special relationship with a
person, as in the case of custody or involuntary
hospitalization," courts may "impose[] liability under a due
process theory, premised on an abuse of that special
relationship," id. (citing Youngberg v. Romeo, 457 U.S. 307,
314-325 (1982)), while the latter exception provides for
liability "where state action creates or exposes an individual to
a danger which he or she would not have otherwise faced."
Kennedy, 439 F.3d at 1061 (citing DeShaney, 489 U.S. at 197;
Wood, 879 F.2d at 589-90).

        In his FAC, plaintiff alleges that "[a]t all material
times . . . JOHN DOE[] was a student in KELLY[']s class and had a
special relationship with the defendants, and each of them."
(FAC ¶ 5.)  Aside from this legal conclusion, the only facts
supporting any "special relationship" in this case are those
which indicate that defendants Kelly and Traverso were
plaintiff's teacher and school-district superintendent,
respectively.  (See FAC ¶ 3.)  Plaintiff, however, has cited no
cases--and the court is aware of none--that accord any "special"
status to these relationships for purposes of DeShaney's special
relationship exception.  In contrast, defendants have cited
several cases from other circuits that expressly reject this
proposition.  See, e.g., Walton v. Alexander, 44 F.3d 1297, 1304-
05 (5th Cir. 1995); Dorothy J. v. Little Rock Sch. Dist., 7 F.3d
729, 732 (8th Cir. 1993); D.R. by L.R. v. Middle Bucks Area

1  Vocational Technical Sch., 972 F.2d 1364, 1371 (3d Cir. 1992).

2  These cases focus their analysis on whether "the state, through

3  its affirmative acts, held [the plaintiff] at [school]

4  involuntarily," Walton, 44 F.3d at 1297, and conclude that

5  "compulsory attendance laws [do] not liken school children to

6  prisoners and the involuntarily committed."  Middle Bucks, 972

7  F.2d at 1372.

8          In his opposition, plaintiff attempts to distinguish

9  these cases by emphasizing that the site of his alleged

10  molestation is a "community day school" created pursuant to

11  California statute in order to "serve mandatory and other

12  expelled students, students referred by a School Attendance

13  Review Board, and other high-risk youths."  (Opp'n 2:1-3)

14  (quoting Cal. Dep't of Ed., Community Day Schools,

15  http://www.cde.ca.gov/sp/eo/cd.)  Specifically, plaintiff asserts

16  that, pursuant to the California statute governing community day

17  schools, plaintiff came to attend Picard Day School through an

18  "involuntary transfer".  (Id. at 2:16-18 (quoting Cal. Educ. Code

19  § 48662(a)) (emphasis added).)  Plaintiff contends, therefore,

20  that his relationship with defendants was analogous to "the case

21  of custody or involuntary hospitalization."  Grubbs, 974 F.2d

22  119, 121 (9th Cir. 1992) (emphasis added).

23          As an initial matter, the court questions whether this

24  vague description of the nature of plaintiff's school is

25  sufficient to determine whether DeShaney's special relationship

26  exception is applicable.  Cf., e.g., Middle Bucks, 972 F.2d at

27  1371-72 (requiring a comprehensive review of the a state's

28  compulsory education regime to determine whether a special

relationship existed for purposes of <u>DeShaney</u>); <u>see also</u> <u>Iqbal</u>,
129 S. Ct. at 1950 ("[O]nly a complaint that states a plausible
claim for relief survives a motion to dismiss. . . . [W]here the
well-pleaded facts do not permit the court to infer more than the
mere possibility of misconduct, the complaint has alleged--but it
has not "show[n]"--"that the pleader is entitled to relief."
(citing Fed. Rule Civ. Proc. 8(a)(2)) (citation omitted) (third
alteration in original)).  Indeed, the fact that plaintiff's
attendance at Picard Day School is "involuntary" does not,
standing alone, distinguish it from traditional public schools.
If public school attendance were truly voluntary, there would
never have been any need for truant officers.

          Defendants, however, do not directly confront
plaintiff's special-relationship argument; instead, they
correctly note that the factual contentions presented in
plaintiff's opposition are wholly absent from the FAC.  It would
be improper, therefore, for this court to rely upon these facts
in ruling on defendants' motion to dismiss.  <u>See, e.g.</u>, <u>N. Star</u>
<u>Int'l v. Ariz. Corp. Comm'n</u>, 720 F.2d 578, 581 (9th Cir. 1983)
("The purpose of a motion to dismiss under rule 12(b)(6) is to
test the legal sufficiency of the complaint.  We need not reach
issues for which there is no foundation in the complaint."
(citations omitted)); <u>Med. Benefits Adm'rs of MD, Inc. v. Sierra</u>
<u>R.R. Co.</u>, No. 06-2408, 2007 WL 2914824, at *4 (E.D. Cal. Oct. 5,
2007) (Damrell, J.) ("[F]acts not alleged in the complaint cannot
be considered, and accordingly, the court properly disregards
plaintiffs' arguments based on these new facts.").

          Consequently, absent these additional facts, the FAC

7

1   contains only the legal conclusion that plaintiff "had a special

2   relationship with the defendants, and each of them."  (FAC ¶ 5.)

3   And, as the Supreme Court recently affirmed in Iqbal, courts "are

4   not bound to accept as true a legal conclusion couched as a

5   factual allegation."  129 S. Ct. at 1949-50 (quoting Twombly, 550

6   U.S. at 555).  Accordingly, the court must grant defendants'

7   motion to dismiss plaintiff's § 1983 claim insofar as it is

8   premised on a substantive due process violation through

9   DeShaney's "special relationship" exception.

10          In his opposition to defendants' motion to dismiss,

11   plaintiff also contends that his FAC satisfies DeShaney's "danger

12   creation" exception (Opp'n 3-5), i.e., that defendants "create[d]

13   or expose[d]" plaintiff to a danger which he "would not have

14   otherwise faced."  Kennedy, 439 F.3d at 1061.  As the Ninth

15   Circuit has explained, the "danger creation" exception arises

16   only where state actors "knowingly take affirmative steps" to

17   place a plaintiff at risk.  Johnson v. City of Seattle, 474 F.3d

18   634, 640 (9th Cir. 2007) (emphasis added); Estate of Amos ex rel.

19   Amos v. City of Page, Ariz., 257 F.3d 1086, 1091 (9th Cir. 2001)

20   ("[C]ommon to our cases recognizing a cognizable section 1983

21   claim under the 'danger creation' exception is an affirmative act

22   by the police that leaves the plaintiff 'in a more dangerous

23   position than the one in which they found him.'" (quoting Penilla

24   v. City of Huntington Park, 115 F.3d 707, 710 (9th Cir. 1997))).

25          Here, the FAC does not allege a single affirmative act

26   on behalf of defendant Kelly, plaintiff's teacher, that created

27   or exposed plaintiff to a risk of molestation or harassment by

28   Moes 1 and 2.  Rather, the FAC generally alleges that Kelly

8

"failed to provide plaintiff with a safe learning environment,"
"ignor[ed] facts," "failed to protect" plaintiff, "failed to
monitor" Moes 1 and 2, and "allowed [Moes 1 and 2] to sexually
molest and sexually harass" plaintiff.  (FAC ¶ 7.)  These
allegations of inaction fall squarely within <u>DeShaney</u>'s central
holding that "the state is not liable for its omissions." <u>Estate
of Amos</u>, 257 F.3d at 1090 (citing <u>DeShaney</u>, 489 U.S. at 195).  As
the Supreme Court explained, the Due Process Clause "forbids the
State itself to deprive individuals of life, liberty, or property
without 'due process of law,' but its language cannot fairly be
extended to impose an affirmative obligation on the State to
ensure that those interests do not come to harm through other
means." <u>DeShaney</u>, 489 U.S. at 195.  Accordingly, the court must
grant defendants' motion to dismiss plaintiff's § 1983 claim
insofar as it is premised on a substantive due process violation
by defendant Kelly through <u>DeShaney</u>'s "danger creation"
exception.

          As to defendant Traverso, the superintendent of Butte
Valley, plaintiff repeats many of the same allegations of
inaction averred against defendant Kelly.  However, plaintiff
further alleges that Traverso "placed [Moes] 1 and 2 in class
with JOHN DOE . . . when he knew that [they] presented an
unreasonable risk of harm to JOHN DOE."  (FAC ¶ 8(c).)
Defendants appear to acknowledge that this allegation involves
affirmative conduct satisfying the "danger creation" exception
(<u>see</u> Reply 5:4-7), and several Ninth Circuit cases applying the
"danger creation" exception support this conclusion, <u>see, e.g.</u>,
<u>Grubbs</u>, 974 F.2d at 121-22 (finding affirmative conduct

1  satisfying <u>DeShaney</u>'s "danger creation" exception where state

2  employees assigned plaintiff to work alone in a medical clinic

3  with a violent sex-offender, who subsequently raped her); <u>Wood</u>,

4  879 F.2d at 590 (finding affirmative conduct satisfying

5  <u>DeShaney</u>'s "danger creation" where a police officer stopped the

6  car in which the plaintiff was riding, arrested and removed the

7  driver, impounded the car, and left the plaintiff stranded in a

8  high crime area where she was subsequently raped).

9          In response, Traverso insists that "doing what the law

10  requires, [i.e.,] educating 'Moes 1 & 2,' should not been seen as

11  creating a danger."  (Reply 5:14-15.)  Simply asserting that an

12  action was taken pursuant state law, however, does not relieve

13  Traverso from compliance with the dictates of the federal

14  Constitution.  <u>See generally</u> <u>Spain v. Mountanos</u>, 690 F.2d 742,

15  746 (9th Cir. 1982) ("Under the Supremacy Clause of the United

16  States Constitution, a court, in enforcing federal law, may order

17  state officials to take actions despite contravening state

18  laws.").  Accordingly, the court will deny defendants' motion to

19  dismiss plaintiff's § 1983 claim insofar as his claim is premised

20  on a substantive due process violation by defendant Traverso

21  through <u>DeShaney</u>'s "danger creation" exception.

22          Plaintiff's remaining theory under the Due Process

23  Clause avails the provision's procedural component.

24  Specifically, plaintiff contends that defendants deprived him of

25  his property interest in a "safe school" by "placing MOEs 1 and 2

26  in his class when they knew that such placement presented an

27  unreasonable risk of harm" without first providing "due process

28  of law prior to deprivation of that right."  (Opp'n 9:3-13.)  In

1   support of this contention, plaintiff cites the California State

2   Constitution, which states, "All students and staff of public

3   primary, elementary, junior high, and senior high schools, and

4   community colleges, colleges, and universities have the

5   inalienable right to attend campuses which are safe, secure and

6   peaceful."  Cal. Const. art. I, § 28(f)(1).  The court observes,

7   however, that this aspect of plaintiff's § 1983 claim is not

8   presented in the FAC; nowhere does plaintiff allege that he had a

9   property interest in a safe school or that defendants' conduct

10  amounted to a deprivation of that interest without proper

11  procedural safeguards.

12          Furthermore, a review of the applicable caselaw

13  indicates that this provision does not establish an "entitlement"

14  cognizable in a procedural due process claim.  See, e.g., Town of

15  Castle Rock, Colo. v. Gonzales, 545 U.S. 748, 756 (2005) ("'To

16  have a property interest in a benefit, a person clearly must have

17  more than an abstract need or desire' and 'more than a unilateral

18  expectation of it.  He must, instead, have a legitimate claim of

19  entitlement to it.'" (quoting Bd. of Regents of State Colleges v.

20  Roth, 408 U.S. 564, 577 (1972))).  Such entitlements "are created

21  and their dimensions are defined by existing rules or

22  understandings that stem from an independent source such as state

23  law."  Id. (quoting Paul v. Davis, 424 U.S. 693, 709 (1976)

24  (quotation marks omitted).  Even if defined by state law,

25  however, a benefit cannot amount to an entitlement where a state

26  is under no obligation to provide it.  See generally id. ("[A]

27  benefit is not a protected entitlement if government officials

28  may grant or deny it in their discretion." (citing Ky. Dep't of

11

Corr. v. Thompson, 490 U.S. 454, 462-63 (1989))); Hohmeier v.
Leyden Cmty. High Schs. Dist. 212, 954 F.2d 461, 464 (7th Cir.
1992) ("Policy 4223 does not in fact create such an entitlement
because it does not impose a binding obligation on the school
board to terminate employees only for cause." (emphasis added)).

       Far from holding that the "Right to Safe Schools"
provision establishes any obligation on behalf of the state,
California courts appear to regard this provision as little more
than hortatory:

> [A]lthough safety and happiness are inalienable rights,
> this provision of the Constitution does not establish the
> means whereby they may be enjoyed.  No case has ever held
> that this provision enunciating the inalienable right to
> obtain safety and happiness is self-executing in the
> sense that it gives rise, in and of itself, to . . . an
> affirmative duty on the part of the state to take
> particular steps to guarantee the enjoyment of safety or
> happiness by all citizens.

Clausing v. S.F. Unified Sch. Dist., 221 Cal. App. 3d 1224, 1237
(1990); see Leger v. Stockton Unified Sch. Dist., 202 Cal. App.
3d 1448, 1455 (1988) ("Because section 28(c) does not supply the
necessary rule for its implementation, but is simply a
declaration of rights, it imposes no mandatory duty upon
defendants to make Franklin High School safe."). Thus, since the
"Right to Safe Schools" provision imposes no duty upon the state
to actually make its public schools safe, plaintiff cannot claim
any "entitlement" to such an state-provided benefit.  See
generally Sealed v. Sealed, 332 F.3d 51, 56-57 (2d Cir. 2003)
(holding that a "policy statement" in a state statute "[t]o
protect children whose health and welfare may be adversely
affected through injury and neglect" created "no discrete rights
or reasonable expectations in any specific protective measures"

1   amounting to an entitlement).

2          Accordingly, because the procedural due process aspect

3   of plaintiff's § 1983 claim is not only absent from the FAC, but

4   also does not pertain to any state-created entitlement, the court

5   will dismiss this component of plaintiff's claim.

6          B.   <u>Equal Protection</u>

7          "The purpose of the equal protection clause of the

8   Fourteenth Amendment is to secure every person within the State's

9   jurisdiction against intentional and arbitrary discrimination,

10  whether occasioned by express terms of a statute or by its

11  improper execution through duly constituted agents." <u>Lazy Y</u>

12  <u>Ranch Ltd. v. Behrens</u>, 546 F.3d 580, 588 (9th Cir. 2008) (quoting

13  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (per

14  curiam)).   "The first step in equal protection analysis is to

15  identify the [defendants'] classification of groups."  <u>Id.</u> at 589

16  (quoting <u>Country Classic Dairies, Inc. v. State of Montana, Dep't</u>

17  <u>of Commerce Milk Control Bureau</u>, 847 F.2d 593, 596 (9th Cir.

18  1988)) (alternation in original).   "To accomplish this, a

19  plaintiff can show that the law is applied in a discriminatory

20  manner or imposes different burdens on different classes of

21  people."  <u>Id.</u> (quoting <u>Freeman v. City of Santa Ana</u>, 68 F.3d

22  1180, 1187 (9th Cir. 1995)).

23         To allege a violation of the Equal Protection Clause

24  giving rise to his § 1983 claim, plaintiff provides in pertinent

25  part:

26         At all material times herein, JOHN DOE was a member of a
           protected class of persons, to wit, a student at Picard
27         Day School.

28         TRAVERSO and KELLY intentionally discriminated against

13

1    JOHN DOE in his status as a student at Picard School as
     is alleged in paragraph 7 if the Complaint.
2

3    (FAC ¶¶ 13-14.)

4          Plaintiff's bare legal assertion that defendants

5    Traverso and Kelly "intentionally discriminated" again him is

6    insufficient to satisfy Rule 8 of the Federal Rules of Civil

7    Procedure and cannot withstand a motion to dismiss.[3]  <u>See</u> <u>Iqbal</u>,

8    129 S. Ct. at 1949-50.  Further, plaintiff's unadorned

9    incorporation of prior allegations, which already strain to

10   support both substantive and procedural due process violations,

11   can hardly be transposed to also state an equal protection

12   violation.  <u>See generally</u> <u>Destfino v. Kennedy</u>, No. 08-1269, 2008

13   WL 4810770, at *3 (E.D. Cal. Nov. 3, 2008) (O'Neil, J.) ("Under

14   the Federal Rules of Civil Procedure, a defendant faced with a

15   complaint which incorporates each preceding paragraph, whether

16   relevant or not, is not expected to frame a responsive pleading."

17   (citing <u>Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty.</u>

18   <u>College</u>, 77 F.3d 364, 366 (11th Cir. 1996))).  Indeed, it remains

19   unclear how any of defendant Kelly's alleged conduct could be

20   considered discriminatory toward Picard Day School students given

21   that she was a teacher at that school and had no occasion to

22   "impose different burdens" on persons outside of that group.

23
     _____
24        [3]    The court also notes that plaintiff's status as a
     student at Picard Day School is insufficient to support the legal
25   conclusion that he is a member of a suspect or "protected" class.
     <u>See generally, e.g.</u>, <u>Mass. Bd. of Ret. v. Murgia</u>, 427 U.S. 307,
26   313 (1976) ("[A] suspect class is one 'saddled with such
     disabilities, or subjected to such a history of purposeful
27   unequal treatment, or relegated to such a position of political
     powerlessness as to command extraordinary protection from the
28   majoritarian political process.'" (quoting <u>Antonio Sch. Dist. v.</u>
     <u>Rodriquez</u>, 411 U.S. 1, 16 (1973))).

                                    14

1  Lazy Y Ranch, 546 F.3d at 589; (see FAC ¶¶ 3, 7).

2         Similarly, the allegation that Traverso "fail[ed] to
3  provide or obtain education and training for Kelly" does not
4  sound in unconstitutional discrimination toward plaintiff.  (FAC
5  ¶ 7(e).)  The court is simply left to postulate that perhaps
6  Traverso provided such education and training to teachers at
7  other schools, thus indirectly discriminating against Picard Day
8  students in some fashion.  Of course, plaintiff may very well
9  have a different theory or no theory at all, and for this reason,
10 the Supreme Court has made clear that district courts are not
11 free to coax a hapless complaint into compliance with federal
12 pleading standards.  See Twombly, 550 U.S. at 561-63 (abrogating
13 language in Conley v. Gibson, 355 U.S. 41 (1957), which had
14 suggested that a "claim would survive a motion to dismiss
15 whenever the pleadings left open the possibility that a plaintiff
16 might later establish some 'set of [undisclosed] facts' to
17 support recovery" (alteration in original)).

18         In sum, while Federal Rule of Civil Procedure 8 only
19 requires plaintiff to supply a "short plain statement" in his
20 FAC, that statement must still be sufficient to "show[] that the
21 pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2)
22 (emphasis added).  Plaintiff's conclusory allegation of
23 "intentional discrimination" and his cross-reference to alleged
24 due process violations fall short of this standard.  See
25 generally Iqbal, 129 S. Ct. at 1950 ("Rule 8 marks a notable and
26 generous departure from the hyper-technical, code-pleading regime
27 of a prior era, but it does not unlock the doors of discovery for
28 a plaintiff armed with nothing more than conclusions.").

1  Accordingly, the court will grant defendants' motion to dismiss

2  plaintiff's § 1983 claim insofar as it relies upon violations of

3  the Equal Protection Clause.

4       C.   Dismissal with Leave to Amend

5            "Dismissal with prejudice and without leave to amend is

6  not appropriate unless it is clear . . . that the complaint could

7  not be saved by amendment." Eminence Capital, LLC v. Aspeon,

8  Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (citing Chang v. Chen,

9  80 F.3d 1293, 1296 (9th Cir. 1996)).  Although plaintiff has

10 already filed five complaints in this action, this motion is the

11 first instance in which plaintiff's allegations regarding the Due

12 Process and Equal Protection Clauses have been tested.  In

13 addition, many of the alleged violations subject to dismissal are

14 not so demonstrably meritless that amendment would be futile, but

15 instead suffer from a lack of factual support.  Defendants,

16 moreover, have failed to show that they will be prejudiced if

17 plaintiff is allowed to file a fifth amended complaint. See id.

18 (holding that in determining whether to dismiss a claim without

19 leave to amend, "the consideration of prejudice to the opposing

20 party that carries the greatest weight").

21           In determining whether to grant plaintiff leave to

22 amend, the court also considers that, four days before plaintiff

23 filed his FAC, the Supreme Court issued its decision in Ashcroft

24 v. Iqbal, 129 S. Ct. 1937 (2009), which provided extensive

25 guidance regarding Rule 8 of the Federal Rules of Civil

26 Procedure.  Although Iqbal's majority opinion itself did not

27 intimate any seachange, jurists and legal commentators have

28 observed that the decision marks a striking retreat from the

highly permissive pleading standards often thought to distinguish
the federal system from "the hyper-technical, code-pleading
regime of a prior era," 129 S. Ct. at 1949.  <u>See, e.g.</u>, <u>Moss v.
U.S. Secret Serv.</u>, --- F.3d ----, No. 07-36018, 2009 WL 2052985,
at *8 (9th Cir. July 16, 2009); Adam Liptak, <u>9/11 Case Could
Bring Broad Shift on Civil Suits</u>, N.Y. Times, July 21, 2009, at
A10.

          Prior to <u>Iqbal</u>, many courts--including this court and,
apparently, the Supreme Court itself--read Rule 8 to express a
"willingness to 'allow[] lawsuits based on conclusory allegations
. . . to go forward,'" <u>Maduka v. Sunrise Hosp.</u>, 375 F.3d 909, 912
(9th Cir. 2004) (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S.
506, 514 (2002)) (alteration in original).  Indeed, for over half
a century, district courts had been instructed that the "short
plain statement" required by Rule 8 "must simply 'give the
defendant fair notice of what the plaintiff's claim is and the
grounds upon which it rests.'" <u>Swierkiewicz</u>, 534 U.S. at 514
(quoting <u>Conley</u>, 355 U.S. at 47).  Now, however, even the
official Federal Rules of Civil Procedure Forms, which were
touted as "sufficient under the rules and . . . intended to
indicate the simplicity and brevity of the statement which the
rules contemplate," Fed. R. Civ. Proc. 84, have been cast into
doubt by <u>Iqbal</u>.  <u>See, e.g.</u>, Fed. R. Civ. P. Form 9 (setting forth
a complaint for negligence in which the plaintiff simply states,
"On June 1, 1936, in a public highway called Boylston Street in
Boston, Massachusetts, defendant negligently drove a motor
vehicle against plaintiff who was then crossing said highway").

          Accordingly, although the court will grant in part

17

1  defendants' motion to dismiss, the court will also permit

2  plaintiff leave to amend.  Plaintiff, however, is admonished to

3  thoroughly and carefully set forth his allegations in any

4  subsequent amended complaint, as both judicial resources and

5  fairness to defendants preclude unlimited opportunities to amend

6  the pleadings.  See, e.g., Beard v. Lucio, No. 08-570, 2009 WL

7  393016, at *2 (C.D. Cal. Feb. 13, 2009) ("Although leave to amend

8  generally is liberally allowed, Plaintiff should not expect

9  unlimited opportunities to file a complaint that passes the

10  Court's initial screenings." (citing McHenry v. Renne, 84 F.3d

11  1172, 1178-80 (9th Cir. 1996))).

12        IT IS THEREFORE ORDERED that defendants' motion to

13  dismiss plaintiff's § 1983 claim be, and the same hereby is,

14        (1) GRANTED insofar as the claim is based on a

15  violation of substantive due process under DeShaney's "special

16  relationship" exception;

17        (2) GRANTED insofar as the claim is based on a

18  violation of substantive due process by defendant Kelly under

19  DeShaney's "danger creation" exception;

20        (3) GRANTED insofar as the claim is based on a

21  violation of procedural due process;

22        (4) GRANTED insofar as the claim is based on a

23  violation of the Equal Protection Clause; and

24        (5) DENIED in all other respects.

25  ///

26  ///

27  ///

28  ///

1          Plaintiff has thirty days from the date of this Order

2    to file an amended complaint consistent with this Order.

3    DATED:   August 5, 2009

4
5                                                           WILLIAM B. SHUBB
6                                                           UNITED STATES DISTRICT JUDGE
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

19